**Jonathan Stone, ESQ, CPA, MST, LLC**
**Jonathan Stone, Esquire**
**490 Schooley's Mountain Road–Bldg. 3A**
**Hackettstown, New Jersey 07840–4002**
**Tel. (908) 979–9919 / Fax. (908) 979–9920**
jonathan@jonstonelaw.com
**Attorney for Debtor**

| | |
|---|---|
| **In re:** | **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** |
| **Lisa Ann Filippini,** | **Honorable John K. Sherwood, U.S.B.J.** |
| **Debtor.** | **Chapter 13** |
| | **Case No.  25–16171 (JKS)** |
| | **Hearing Date:  November 13, 2025** |
| | **Hearing Time: 10:00 am** |
| | **CERTIFICATION OF COUNSEL IN SUPPORT OF MOTION FOR LEAVE TO WITHDRAW AS ATTORNEY FOR DEBTOR** |

1.      Jonathan Stone, of full age, hereby certifies as follows:

## I.      INTRODUCTION AND BACKGROUND

2.      I am an attorney admitted to practice law in the State of New Jersey and before this Court. I am the attorney of record for Debtor Lisa Ann Filippini in the above–captioned bankruptcy case.

3.      I have personal knowledge of the facts outlined in this Certification, and if called as a witness, I could and would testify competently to these facts.

4.      I make this Certification in support of my Motion for Leave to Withdraw as attorney for the Debtor.

## II.    MY REPRESENTATION OF THE DEBTOR

5.    I have represented Lisa Ann Filippini as her bankruptcy counsel in this Chapter 13 bankruptcy case since June 10, 2025.

6.    The Debtor owns and operates a dog grooming business in New Jersey known as Lisa's Priceless Pets, LLC.

7.    Disputed Creditor Shannon Reilly has filed a proof of claim in this bankruptcy case in excess of $500,000.00 for unpaid wages allegedly owed to him by the Debtor.

8.    Disputed Creditor Shannon Reilly has indicated through his counsel an intention to file an adversary proceeding seeking a determination that his claim is non–dischargeable pursuant to 11 U.S.C. § 523.

9.    The Meeting of Creditors pursuant to 11 U.S.C. § 341 was held on September 4, 2025.

10.    At the Meeting of Creditors, the Debtor testified under oath regarding various matters, including the ownership structure of Lisa's Priceless Pets.

11.    Disputed Creditor Shannon Reilly has asserted that the Debtor's mother, Diana Kemp, owns fifty percent (50%) of Lisa's Priceless Pets.

12.    Diana Kemp is Lisa's mother and also my bankruptcy client in a related case.

13.    However, the Debtor testified at the Meeting of Creditors that she is the sole owner of Lisa's Priceless Pets.

14.    This testimony is corroborated by the Certificate of Formation filed with the New Jersey Secretary of State, which lists only the Debtor as owner.

**III.  THE FORGERY INCIDENT – OCTOBER 4, 2025**

**A.  Discovery of the Forged Letter**

15.  On or about October 11, 2025 at approximately 5:01 p.m., I first learned that the Debtor had caused a letter to be delivered to Shirley De Paola, a former employee of Lisa's Priceless Pets, which fraudulently bore my name and signature.  The delivery of this forged letter to Ms. De Paola had occurred on or about October 4, 2025. I was unaware of this letter's existence until Ms. De Paola contacted me on October 11, 2025.

16.  A true and correct copy of this fraudulent letter is attached hereto as **Exhibit A**.

17.  **I did not write this letter.**

18.  **I did not review this letter.**

19.  **I did not authorize this letter.**

20.  **I had no knowledge of this letter's existence before its delivery to Ms. De Paola.**

21.  **I did not give anyone permission to use my name or signature on any communication to Ms. De Paola or anyone else regarding this matter.**

**B.  Content of the Forged Letter**

22.  The letter attached as Exhibit A is addressed to "Shirley De Paol" [sic– misspelling the recipient's name].

23.  The letter purports to be from me and identifies me as "Attorney for Lisa's Priceless Pets."

24.  I do not represent Lisa's Priceless Pets as an entity.  I represent Lisa Ann Filippini individually in her bankruptcy case.

25. The letter contains the following content:

   a. Statements about Ms. De Paola's employment at Lisa's Priceless Pets;

   b. Criticisms of Ms. De Paola's work performance, education, experience, and attitude;

   c. A threat that states: "If you continue to place defamatory comments against Lisa's Priceless Pets Miss Filippini will file charges against you";

   d. A claim that "We have witnesses and cameras of every day activity also your comments";

   e. A representation that "Lisa's Priceless Pets paid you exactly according to the law";

   f. A closing that reads "Sincerely Yours, Jonathan Stone, Attorney for Lisa's Priceless Pets."

26. The letter contains numerous grammatical errors, run–on sentences, missing punctuation, and unprofessional language that I would never use in correspondence, whether professional or not.

27. The letter lacks proper business letter format, letterhead, contact information, or any of the hallmarks of professional legal correspondence.

28. Any attorney reviewing this letter would immediately recognize that a licensed attorney did not write it.

**C. The Circumstances of the Forgery**

29. The delivery of this forged letter to Ms. De Paola occurred on or about October 4, 2025, seven days before I learned of its existence.

30. At approximately 12:00 p.m. on October 4, 2025, the Debtor contacted Ms. De Paola.

31. The Debtor directed Ms. De Paola to visit the business location of Lisa's Priceless Pets to retrieve personal items that belonged to Ms. De Paola.

32. When Ms. De Paola arrived at the business location, a current employee of Lisa's Priceless Pets handed Ms. De Paola an envelope.

33. The envelope contained the forged letter attached as Exhibit A.

**D. The Debtor's Admission**

34. After I learned of the forged letter, I contacted the Debtor to ask her about it.

35. The Debtor admitted to me that she requested her certified public accountant, Larry Stetze, to draft the letter.

36. The Debtor admitted to me that Mr. Stetze prepared the letter and gave it to her.

37. The Debtor admitted to me that she then caused the letter to be delivered to Ms. De Paola through a current employee.

38. The Debtor's admissions were clear and unequivocal.  She did not claim confusion or misunderstanding when she admitted these facts to me.

39. Mr. Stetze is a certified public accountant, not an attorney licensed to practice law.

40. The Debtor knew or should have known that:

    a. I did not authorize the letter;

    b. Using my name without authorization is fraudulent and illegal;

    c. The letter threatened legal action against a third party;

    d. The conduct constituted forgery and criminal impersonation under New Jersey law.

**IV.    OCTOBER 12, 2025 TEXT MESSAGE – CONTINUED DISHONESTY**

41.    On October 12, 2025, at 12:33 p.m., I received a text message from the Debtor on my cell phone.

42.    A true and correct copy of an extract of this text message is attached hereto as **Exhibit B**.

43.    The text message from the Debtor stated as follows (verbatim, including all errors):

> Hey Jonathan, I'm home from the hospital. I don't understand what all that stuff was about my account and sent it to me. He did not send anything to you. I just sent you some tax returns. I don't I didn't think there was anything wrong with that, I think how else am I supposed to send you things so I'm a little confused.

44.    This text message was sent after the Debtor had already clearly admitted to me that she orchestrated the creation and delivery of the forged letter.

45.    The text message demonstrates the following:

a.    An attempt to deny or minimize the conduct the Debtor previously admitted;

b.    An attempt to create a false written record claiming ignorance and confusion;

c.    An attempt to conflate legitimate document transmission (tax returns) with the fraudulent letter bearing my name;

d.    Consciousness of guilt (the Debtor acknowledges there is "stuff" that requires explanation);

e.    Continued dishonesty and potential obstruction of justice.

46.    The Debtor's claim of confusion in this text message is not credible and contradicts her previous clear admission that she orchestrated the forgery.

6

47.    The statement, "He did not send anything to you" appears to refer to Mr. Stetze and is technically true but deliberately misleading–Mr. Stetze gave the letter to the Debtor, who then caused it to be delivered to Ms. De Paola.

48.    The reference to being "home from the hospital" appears to be an attempt to create sympathy or suggest some explanation for her conduct.

49.    I did not respond to this text message.

## V.    IMPACT ON MY ABILITY TO REPRESENT THE DEBTOR

### A.    Personal Impact – I Am a Crime Victim

50.    The Debtor's conduct has personally affected me in the following ways:

  a.    My name and professional identity were used without my authorization to threaten a third party;

  b.    My professional reputation has been damaged by association with this fraudulent and unprofessional letter;

  c.    I may face questions from other attorneys, clients, or third parties about whether I sent this letter;

  d.    I have been forced to take time away from my practice (tax extension deadline is three days away – note:  I am also a Certified Public Accountant) to address this forgery;

  e.    I have been placed in the position of being a crime victim while simultaneously serving as the perpetrator's attorney;

  f.    I have suffered emotional distress from this betrayal of trust by a client.

51.    As a result of the Debtor's conduct, I am considering the following actions:

  a.    Filing a criminal complaint with law enforcement authorities for forgery under N.J.S.A. 2C:21–1 and/or criminal impersonation under N.J.S.A. 2C:21–17;

  b.    Filing a civil action against the Debtor for damages to my professional reputation;

     c.     Reporting this conduct to the Court and the bankruptcy trustee (which I am doing through this Motion;

     d.     Reporting Mr. Stetze to the New Jersey State Board of Accountancy for engaging in the unauthorized practice of law;

     e.     Any other legal remedies available to me.

52. My personal interests as a crime victim are now directly adverse to the Debtor's interests in minimizing the consequences of her criminal conduct.

**B.   Breakdown of Trust**

53. The attorney–client relationship requires a foundation of trust.

54. The Debtor's forgery of my name and signature has completely destroyed any possibility of trust between us.

55. I can no longer trust the Debtor to be honest with me, with the Court, with the trustee, or with other parties.

56. The October 12, 2025 text message attempting to deny conduct she previously admitted demonstrates that the Debtor continues to engage in dishonest behavior.

57. I cannot effectively represent a client I cannot trust.

**C.   I Will Be a Witness**

58. I will be a necessary witness regarding the following matters:

     a.     The fact that I did not write, review, or authorize the forged letter;

     b.     The Debtor's admissions to me that she orchestrated the forgery;

     c.     The October 12, 2025 text message and the Debtor's attempt to create a false record;

     d.     The impact of the forgery on my professional reputation;

     e.     The Debtor's credibility and character;

> f.      Any communications I had with the Debtor about the business, its ownership, or the bankruptcy case.

59.     If I am called as a witness in the anticipated adversary proceeding or any other proceeding arising from this bankruptcy, I cannot simultaneously serve as the Debtor's advocate.

## D.     Conflict with Professional Obligations

60.     I have ethical obligations under the New Jersey Rules of Professional Conduct that conflict with continued representation of the Debtor, as detailed in my Brief filed in support of this Motion.

61.     These obligations include:

> a.      The duty not to assist a client in criminal or fraudulent conduct (N.J. RPC 1.2(d));
>
> b.      The duty to avoid conflicts of interest, including personal interest conflicts (N.J. RPC 1.7);
>
> c.      The duty of candor to the tribunal (N.J. RPC 3.3);
>
> d.      The prohibition on serving as both advocate and witness (N.J. RPC 3.7).

62.     Continued representation of the Debtor would violate these ethical obligations.

## VI.    IMPACT ON THE BANKRUPTCY CASE

## A.     Credibility Issues

63.     The Debtor's proven willingness to commit forgery and fraud provides evidence that can be used to impeach her credibility regarding all testimony and representations she has made in this bankruptcy case.

64. Specifically, the Debtor's credibility regarding the following matters is now subject to serious question:

    a. Her testimony at the Meeting of Creditors that she is the sole owner of Lisa's Priceless Pets;

    b. Her schedules and statement of financial affairs;

    c. Any representations made about assets, liabilities, income, or expenses;

    d. Any statements made about wage payments or employment practices at Lisa's Priceless Pets;

    e. Any other sworn testimony or representations.

65. When a debtor commits forgery during the pendency of a bankruptcy case, it is reasonable for the Court, the trustee, and creditors to question whether other representations made by that debtor are truthful.

## B. Relevance to Dischargeability

66. Disputed Creditor Shannon Reilly has indicated through counsel that he intends to file an adversary proceeding seeking a determination that his claim is non-dischargeable under 11 U.S.C. § 523.

67. Dischargeability determinations under § 523 frequently turn on issues of honesty, fraud, and good faith.

68. The Debtor's forgery and continued dishonesty are highly relevant to these determinations.

69. Disputed Creditor Shannon Reilly will likely use the forgery as evidence of the Debtor's dishonest character and willingness to engage in fraud.

**C.      Potential Witness Intimidation**

70.      Ms. De Paola is a former employee of Lisa's Priceless Pets who may have knowledge relevant to Disputed Creditor Shannon Reilly's wage claim and the anticipated adversary proceeding.

71.      The forged letter threatened Ms. De Paola with legal action if she continued to make allegedly "defamatory comments."

72.      This threatening letter, delivered under the false pretense that it came from an attorney, may have been intended to intimidate Ms. De Paola and discourage her from providing information to Disputed Creditor Shannon Reilly or testifying in any proceeding.

73.      If this was the Debtor's intent, it may constitute witness tampering or intimidation.

**VII.    ACTIONS TAKEN AND PLANNED**

**A.      This Motion and Related Filings**

74.      I am filing this Motion for Leave to Withdraw as attorney for the Debtor.

75.      Right after the October 15, 2025 tax extension deadline passes (I am also a Certified Public Accountant now, behind in work due to Debtor's fraud on me), I will file a Notice of Fraudulent Conduct to inform this Court, the trustee, and all parties in interest of the Debtor's conduct.

76.      I will also be filing a Motion for Leave to Withdraw as attorney for Diana Kemp (the Debtor's mother) due to related conflicts created by the Debtor's conduct.

**B.      Communications with Other Parties**

77.     I already sent the following communications:

    a.      A cease and desist text (and soon a letter) to the Debtor demanding that she stop using my name and preserve all evidence;

    b.      A text to Ms. De Paola informing her that the letter purporting to be from me was a forgery;

    c.      A text to Mr. Stetze (and soon a letter) demanding that he cease drafting legal letters and engaging in the unauthorized practice of law.

**C.      Evidence Preservation**

78.     I have preserved all evidence of the Debtor's fraudulent conduct, including:

    a.      The original forged letter (Exhibit A);

    b.      Extracted and preserved my text message history with Debtor and Shirley DePaola using specialized forensic software (iMazing and TouchCopy);

    c.      My notes regarding the Debtor's admissions to me;

    d.      A timeline of events;

    e.      All other relevant documents and communications.

79.     I have made multiple backup copies of all electronic evidence.

80.     I have printed hard copies of all evidence.

81.     This evidence is available to the Court, the trustee, creditors, and law enforcement as appropriate.

## VIII.  NO PREJUDICE FROM WITHDRAWAL

82.    Granting this Motion will not prejudice the Debtor, other parties, or the administration of this bankruptcy case for the following reasons:

   a.    Disputed Creditor Shannon Reilly's anticipated adversary proceeding has not yet been filed;

   b.    There are no imminent deadlines or hearings in this bankruptcy case that would be affected by my withdrawal (other than the confirmation hearing);

   c.    The Debtor will have adequate time (at least 30 days) to retain substitute counsel;

   d.    The bankruptcy case is not at a critical stage;

   e.    I will cooperate with the Debtor's substitute counsel to ensure an orderly transition.

83.    Any prejudice to the Debtor from my withdrawal is entirely the result of her own criminal conduct, not any action or inaction on my part.

84.    The Debtor cannot complain of prejudice when she created the conflict through her own forgery and fraud.

## IX.  NOTICE TO THE DEBTOR

85.    I will have provided the Debtor with notice of this Motion through:

   a.    A cease and desist text dated October 12, 2025 (and tomorrow via letter);

   b.    Service of this Motion and supporting papers as reflected in the Certificate of Service.

86.     The Debtor has been advised in writing that she must retain substitute bankruptcy counsel immediately.

87.     The Debtor has been advised that Disputed Creditor Shannon Reilly's adversary proceeding could be filed at any time and that she needs counsel in place when that happens.

## X.     NECESSITY OF PUBLIC DISCLOSURE

88.     I am making the details of the Debtor's forgery and fraudulent conduct public in these court filings rather than seeking a quiet withdrawal for the following reasons:

a.      **The Court Cannot Grant Withdrawal Without Understanding Why:** The Court must understand the nature and seriousness of the conflicts to determine whether withdrawal is mandatory under N.J. RPC 1.16(a).  A generic withdrawal request citing "conflicts" would be insufficient.

b.      **The Forgery Affects These Bankruptcy Proceedings:** The Debtor's proven willingness to commit forgery and fraud undermines the credibility of all representations she has made to this Court, including testimony at the Meeting of Creditors.  This is relevant to the bankruptcy case and the anticipated adversary proceeding.

c.      **All Parties in Interest Have a Right to Know:** The bankruptcy trustee, creditors, and the United States Trustee have a right to know that the Debtor has engaged in criminal conduct during the pendency of this case. This information is relevant to:

- The Debtor's credibility
- Potential grounds for dismissal or denial of discharge
- The anticipated adversary proceeding regarding dischargeability
- The administration of the bankruptcy estate

14

d.      **My Services Were Used in the Fraud:** The Debtor used my name and professional identity to perpetrate the forgery.  Under the New Jersey Rules of Professional Conduct, I have specific disclosure obligations when my services have been used in furtherance of a client's fraud.

e.      **Potential Witness Intimidation**: The forged letter threatened a potential witness (Shirley De Paola) who may have relevant information about the Debtor's business practices and Disputed Creditor Shannon Reilly's wage claim.  The Court and parties should be aware of potential witness tampering.

f.      **Self–Defense:** The Debtor may attempt to claim that I failed to adequately represent her, or that I am withdrawing for improper reasons.  Public disclosure of the facts protects me from such false allegations.

89.      I am not disclosing this information out of any malice or desire to harm the Debtor.  Rather, I am disclosing it because:

- The New Jersey Rules of Professional Conduct require or permit such disclosure;
- The Court cannot properly evaluate this Motion without full factual disclosure;
- The administration of justice requires that the Court and parties be aware of the Debtor's fraudulent conduct.

90.      The full legal basis for permissible disclosure is set forth in my Brief in Support of this Motion.

## XI.    CONCLUSION

91.      The Debtor's forgery of my name and signature, in violation of New Jersey criminal law (N.J.S.A. 2C:21–1), has created irreconcilable conflicts that make continued representation impossible and unethical under the New Jersey Rules of Professional Conduct.

92.      The Debtor's October 12, 2025  text message attempting to deny conduct she previously admitted demonstrates continued dishonesty and bad faith.

93.      I am personally adversely affected as a crime victim, I will be a necessary witness, and continued representation would violate multiple ethical rules.

94.      Withdrawal is mandatory under N.J. RPC 1.16(a).

95.     The Debtor will have adequate time to retain substitute counsel, and this withdrawal will prejudice no party.

96.     For all of the foregoing reasons, and for the reasons outlined in my Brief in Support of this Motion, I respectfully request that this Court grant my Motion for Leave to Withdraw as attorney for Debtor Lisa Ann Filippini.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:  October 13, 2025          By:     /s Jonathan Stone_____
                                          Jonathan Stone, Esquire
                                          Attorney for Debtor