**Jonathan Stone, ESQ, CPA, MST, LLC**
**Jonathan Stone, Esquire**
**490 Schooley's Mountain Road–Bldg. 3A**
**Hackettstown, New Jersey 07840–4002**
**Tel. (908) 979–9919 / Fax. (908) 979–9920**
jonathan@jonstonelaw.com
**Attorney for Debtor**

|  |  |
|---|---|
| In re:<br><br>Lisa Ann Filippini,<br><br>          Debtor. | **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>**Honorable John K. Sherwood, U.S.B.J.**<br><br>**Chapter 13**<br><br>**Case No.  25–16171 (JKS)**<br><br>**NOTICE OF FRAUDULENT CONDUCT BY DEBTOR AND CONFLICT OF INTEREST REQUIRING WITHDRAWAL OF DEBTOR'S COUNSEL** |

Jonathan Stone, Esquire, counsel for the Debtor, hereby provides notice to this Court, the Standing Chapter 13 Trustee, and all parties in interest of serious fraudulent conduct by the Debtor that has created irreconcilable conflicts requiring counsel's withdrawal and that may be relevant to the administration of this bankruptcy case and any adversary proceeding.

**I.      BACKGROUND**

1.      Jonathan Stone, Esquire has served as bankruptcy counsel for Debtor Lisa Ann Filippini since June 10, 2025.

2.      The Debtor owns and operates Lisa's Priceless Pets, LLC, a dog grooming business.

3.      Creditor Shannon Reilly has filed a proof of claim exceeding $500,000 for unpaid wages.

4. Creditor Shannon Reilly has indicated through counsel an intention to file an adversary proceeding regarding dischargeability of his claim pursuant to 11 U.S.C. § 523.

5. At the Meeting of Creditors held on September 4, 2025, the Debtor testified under oath regarding, inter alia, the ownership structure of Lisa's Priceless Pets, LLC.

6. Creditor Shannon Reilly has asserted that the Debtor's mother, Diana Kemp, owns fifty percent (50%) of Lisa's Priceless Pets, LLC, contrary to the Debtor's testimony and the Certificate of Formation filed with the New Jersey Secretary of State showing the Debtor as sole owner.

## II. THE FORGERY – OCTOBER 4, 2025

7. On or about October 4, 2025, the Debtor orchestrated a scheme to threaten a former employee, Shirley De Paola, using undersigned counsel's name and professional identity.

8. Specifically, the Debtor:

- Requested her certified public accountant, Larry Stetze (a non–lawyer), to draft a threatening letter addressed to Ms. De Paola.

- Received the completed letter from Mr. Stetze, which fraudulently bore undersigned counsel's name and falsely identified him as "Attorney for Lisa's Priceless Pets".

- Caused the letter to be delivered to Ms. De Paola through a current employee of Lisa's Priceless Pets, LLC.

9. **Undersigned counsel did not write, review, authorize, or have any knowledge of this letter before its delivery.**

10. The Debtor expressly admitted to undersigned counsel that she orchestrated all aspects of this scheme, including requesting the letter, receiving it, and arranging its delivery.

11. The fraudulent letter (attached as Exhibit A) contained:

- Criticisms of Ms. De Paola's work performance and character.

- Threats to "file charges" against Ms. De Paola if she continued to make allegedly defamatory comments.

- Representations about wage payments and employment terms.

- A false signature line reading "Jonathan Stone, Attorney for Lisa's Priceless Pets".

12. The letter contains numerous grammatical errors and unprofessional language, making it apparent that an attorney did not write it.

### III. OCTOBER 12, 2025 TEXT – CONTINUED DISHONESTY

13. On October 12, 2025, at 12:33 p.m., after admitting to the forgery, the Debtor sent undersigned counsel a text message claiming she does not understand what the problem is and is "confused."

14. The text message stated:

> Hey Jonathan, I'm home from the hospital. I don't understand what all that stuff was about my account and sent it to me. He did not send anything to you. I just sent you some tax returns. I don't I didn't think there was anything wrong with that, I think how else am I supposed to send you things so I'm a little confused.

15. This text message represents an attempt to:

- Create a false record denying knowledge of wrongdoing.

- Conflate legitimate document transmission (tax returns) with the fraudulent letter.

- Feign confusion about conduct the Debtor previously admitted orchestrating.

- Potentially obstruct justice and influence undersigned counsel's actions.

16. The text message demonstrates consciousness of guilt and continued dishonesty, occurring on the very day undersigned counsel was preparing to file withdrawal motions.

## IV. LEGAL SIGNIFICANCE OF DEBTOR'S CONDUCT

### A. Criminal Violations

17. The Debtor's conduct constitutes:

- **Forgery:** Creating and delivering a document with a false signature under the State of New Jersey criminal law.

- **Criminal Impersonation of an Attorney:** Using an attorney's name without authorization to threaten legal action against a third party.

- **Fraud:** Making false representations to Ms. De Paola through the delivery of the forged letter.

- **Potential Obstruction of Justice:** Attempting to create a false record through the October 12, 2025 text message.

### B. Fraud Upon This Court

18. The Debtor's fraudulent conduct may constitute fraud upon this Court because:

- **Timing:** The conduct occurred during the pendency of this bankruptcy case while the Debtor was under this Court's jurisdiction.

- **Bad Faith:** The conduct demonstrates bad faith and dishonesty by the Debtor.

- **Credibility:** The conduct provides powerful impeachment evidence regarding ALL the Debtor's testimony and representations to this Court, including:

    ➢ Testimony at the Meeting of Creditors.

    ➢ Statements about business ownership.

    ➢ Financial disclosures and schedules.

> Statements of financial affairs.

> Any other representations made under oath or penalty of perjury.

- **Relevance to Dischargeability:** The anticipated adversary proceeding will involve issues of honesty, fraud, and good faith. The Debtor's proven willingness to commit forgery and fraud is highly relevant to these determinations under 11 U.S.C. § 523.

### C. Potential Witness Intimidation

19. The fraudulent letter threatened Ms. De Paola, who may be a potential witness in the anticipated adversary proceeding or other proceedings related to this bankruptcy.

20. Ms. De Paola is a former employee who may have knowledge regarding:

- Wage practices at Lisa's Priceless Pets, LLC.
- Business operations.
- The Debtor's conduct and credibility.
- Facts relevant to Shannon's wage claim.

21. Threatening a potential witness through a forged legal letter may constitute witness intimidation or tampering.

## V. IMPACT ON BANKRUPTCY PROCEEDINGS

### A. Credibility Impeachment

22. The Debtor's fraudulent conduct provides powerful evidence to impeach her credibility regarding all matters in this bankruptcy case.

23. When a debtor testifies at a Meeting of Creditors that she is the sole owner of a business, and then commits forgery and fraud during the bankruptcy, her credibility on the ownership issue (and all other issues) is severely undermined.

24. This is particularly significant given that Creditor Shannon Reilly asserts the Debtor's mother owns 50% of the business – a claim the Debtor denied under oath.

25. The Debtor's demonstrated willingness to lie, forge, and engage in fraud makes it reasonable to question whether her testimony about ownership was truthful.

### B.  Dischargeability Issues

26. Creditor Shannon Reilly's anticipated adversary proceeding will likely allege that debts are non–dischargeable under 11 U.S.C. § 523, which includes provisions regarding fraud and false representations.

27. The Debtor's forgery and continued dishonesty are directly relevant to determinations under § 523, which focuses on the debtor's honesty and good faith.

28. Courts consider a debtor's conduct during bankruptcy proceedings when evaluating dischargeability. *See, e.g., In re Kimzey*, 761 F.3d 1150, 1157–58 (9th Cir. 2014) (holding that debtor's post–petition conduct is relevant to dischargeability determinations).

### C.  Grounds for Dismissal

29. The Debtor's fraudulent conduct may constitute cause for dismissal of this bankruptcy case pursuant to 11 U.S.C. § 1307(c).

30. Courts have dismissed bankruptcy cases for debtor misconduct including dishonesty, bad faith, and conduct that abuses the bankruptcy process.

### D.  Impact on Mother's Involvement

31. Undersigned counsel has also been representing (or providing guidance to) the Debtor's mother, Diana Kemp, regarding the bankruptcy proceedings and the ownership dispute.

32. The Debtor's forgery and dishonesty create irreconcilable conflicts that also require withdrawal from representing Diana Kemp (subject of separate motion).

33. Diana Kemp's testimony at the Meeting of Creditors is now tainted by association with the Debtor's proven dishonesty, even if Ms. Kemp testified truthfully.

## VI. CONFLICTS OF INTEREST REQUIRING WITHDRAWAL

34. The Debtor's conduct has created multiple irreconcilable conflicts that require undersigned counsel to withdraw as bankruptcy counsel for the Debtor:

- **Personal Interest Conflict:** Undersigned counsel has been personally victimized by the Debtor's forgery. Counsel's professional reputation has been damaged, and counsel may pursue legal remedies against the Debtor. This creates a conflict between counsel's personal interests and the Debtor's interests.

- **Cannot Assist Fraud:** N.J. RPC 1.2(d) prohibits an attorney from assisting a client in conduct the lawyer knows is criminal or fraudulent. Continuing to represent the Debtor while she engages in forgery and fraud would violate this rule.

- **Witness Role:** Undersigned counsel will be a necessary witness regarding the forgery, the Debtor's admissions, and the October 12, 2025 text message. N.J. RPC 3.7 prohibits an attorney from serving as both advocate and witness.

- **Duty to Court:** N.J. RPC 3.3 requires candor to the tribunal. Undersigned counsel cannot continue representing the Debtor while she engages in conduct that may constitute fraud upon the Court.

35. Undersigned counsel filed a Motion to Withdraw as counsel for the Debtor due to these irreconcilable conflicts.

36. Undersigned counsel is also filing a Motion to Withdraw as counsel for Diana Kemp due to related conflicts.

## VII. NOTICE TO COURT AND ALL PARTIES IN INTEREST

**This Court and All Parties Should Be Aware:**

37. **Credibility Issues:** The Debtor's testimony and representations cannot be taken at face value, given her proven willingness to commit forgery and fraud.

38. **Dischargeability Evidence:** The forgery is relevant to any adversary proceeding regarding dischargeability.

39. **Potential Dismissal:** The Debtor's conduct may warrant dismissal of the bankruptcy case for bad faith and fraud.

40. **Criminal Referral:** Undersigned counsel is considering referral to law enforcement authorities for criminal prosecution.

41. **Witness Issues:** Ms. De Paola may have been intimidated by the threatening forged letter.

42. **Ongoing Dishonesty:** The October 12, 2025 text demonstrates the Debtor continues to engage in dishonest conduct.

43. **Plan Confirmation:** The Debtor's fraudulent conduct may affect the Court's determination regarding good faith under 11 U.S.C. § 1325(a)(3), which requires that a Chapter 13 plan be proposed in good faith.

## VIII. PRESERVATION OF EVIDENCE

44. Undersigned counsel has preserved and will continue to preserve all evidence of the Debtor's fraudulent conduct, including:

- The original forged letter (Exhibit A).
- The October 12, 2025 text message (Exhibit B).
- Communications with the Debtor regarding the forgery.

- Timeline of events.

45. This evidence is available to the Court, the trustee, creditors, and law enforcement as appropriate.

## IX. PURPOSE OF THIS NOTICE AND ETHICAL OBLIGATIONS REQUIRING DISCLOSURE

### A. Mandatory Duty of Candor to the Tribunal

46. Undersigned counsel files this Notice pursuant to mandatory obligations under the New Jersey Rules of Professional Conduct. New Jersey RPC 3.3(a) requires candor to the tribunal and mandates that attorneys take reasonable remedial measures, including disclosure when necessary, to avoid assisting a criminal or fraudulent act by the client. The Debtor's forgery occurred during the pendency of these bankruptcy proceedings and directly impacts the credibility of testimony and representations made to this Court. Comment [1] to RPC 3.3 explicitly states that this duty "requires the lawyer to take reasonable remedial measures, including disclosure if necessary, to avoid assisting a criminal or fraudulent act by the client."

### B. Crime–Fraud Exception and Permitted Disclosures

47. The attorney–client privilege does not protect communications in furtherance of crime or fraud. *See Fellerman v. Bradley*, 99 N.J. 493, 502–04 (1985); *In re Nackson*, 114 N.J. 527, 535 (1989). Additionally, New Jersey RPC 1.6(b) expressly permits disclosure of confidential information to: (1) prevent, mitigate or rectify consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services had been used (RPC 1.6(b)(3)); (2) establish a defense on behalf of the lawyer in a controversy with the client (RPC 1.6(b)(5)); and (3) comply with other law or court order (RPC 1.6(b)(6)). All three exceptions apply here.

The Debtor used undersigned counsel's name and professional identity to commit forgery and attorney impersonation – direct misuse of counsel's services and identity.

### C. Mandatory Reporting of Professional Misconduct and Unauthorized Practice

48. New Jersey RPC 8.3(a) requires attorneys to report professional misconduct that raises substantial questions about honesty and trustworthiness. Additionally, New Jersey Court Rule 1:20–3(b) mandates immediate written notification to the Unauthorized Practice of Law Committee when an attorney has knowledge that another person is engaged in the unauthorized practice of law. Mr. Stetze's conduct in drafting legal demand letters, threatening legal action, and holding himself out as providing legal representation (through the use of the undersigned counsel's name) constitutes unauthorized practice under New Jersey law. *See In re Opinion No. 24 of the Committee on the Unauthorized Practice of Law*, 128 N.J. 114, 127 (1992).

### D. Multiple Legitimate Purposes Served

49. This Notice serves several important purposes: (1) informing the Court of conduct affecting the integrity of these proceedings and the credibility of testimony already given; (2) alerting the Standing Chapter 13 Trustee to conduct relevant to the administration of the estate; (3) providing notice to creditors of impeachment evidence relevant to anticipated adversary proceedings; (4) explaining the basis for withdrawal under NJ RPC 1.16(a); (5) protecting against future claims that counsel knew of fraud and failed to disclose it; and (6) alerting appropriate authorities who may need to investigate criminal conduct or unauthorized practice of law.

### E.  New Jersey Legal Authority

50. New Jersey courts have consistently held that attorneys must disclose fraud upon the tribunal even when such disclosure may harm the client. *See In re Freezer*, 196 N.J. 492, 502 (2008) (holding that "an attorney's duty of candor to the court is paramount and may override the duty of confidentiality to the client when necessary to prevent fraud upon the tribunal"); *In re Hollendonner*, 202 N.J. 65, 82 (2010) (stating that "attorneys are officers of the court and owe duties not only to their clients but to the administration of justice"). These authorities and the applicable Rules of Professional Conduct mandate this disclosure.

### F.  Statement of Good Faith and Compliance

51. Undersigned counsel affirms that this Notice is filed in good faith, based on personal knowledge and evidence in counsel's possession, in compliance with mandatory ethical obligations under the New Jersey Rules of Professional Conduct, and to serve the administration of justice. Undersigned counsel will fully cooperate with any investigation by this Court, the Standing Chapter 13 Trustee, the United States Trustee, creditors, law enforcement authorities, or appropriate regulatory bodies.

## X.  CONCLUSION

52. The Debtor's forgery and continued dishonesty demonstrate bad faith, fraud, and a pattern of deception that permeates these bankruptcy proceedings.

53. All parties should be aware of this conduct when evaluating the Debtor's credibility and representations.

54. The Court may wish to consider whether the Debtor's conduct warrants sanctions, dismissal, or other remedial action.

By: /s/ Jonathan Stone
Jonathan Stone, Esquire
Attorney for Debtor

Dated: October 13, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2025, I caused a true and correct copy of the foregoing Notice of Fraudulent Conduct by Debtor and Conflict of Interest Requiring Withdrawal of Debtor's Counsel, together with Exhibits A and B, to be served as follows: BY FIRST–CLASS U.S. MAIL, POSTAGE PREPAID and CERTIFIED MAIL, RETURN RECEIPT REQUESTED to:

Lisa Ann Filippini
20 Konner Drive
Franklin, NJ 07416

Diana Kemp
667 Hurricane Road
Keene, NH 03431

# Exhibit A

To: Shirley De Paol

Lisa's Priceless Pets and Lisa Filippini took as good faith to give you a chance at a job of dog grooming. You came with zero experience.

Miss Filippini took you on in good faith and to give you the guidance you needed to become an experience dog groomer. You agree to 30% to learn Miss Filippini never rushed you she gave you a chance to learn. Your lack of education, experience, attitude proper training effected your progress It is not anyone else's fault if you can not do more dogs you never appreciated Miss Filippini kindness to help you .

If you continue to place defamatory comments against Lisa's Priceless Pets Miss Filippini will file charges against you. We have witnesses and cameras of every day activity also your comments.

Lisa's Priceless Pets paid you exactly according to the law


Sincerely Yours,


Jonathan Stone

Attorney for Lisa's Priceless Pets



# Exhibit B

# iMessage Conversation with Lisa Filippini

## 10/12/2025

iMessage Received on 10/12/2025 12:33:46 PM from Lisa Filippini (+19734941849)

> Hey Jonathan, I'm home from the hospital. I don't understand what all that stuff was about my account and sent it to me. He did not send anything to you. I just sent you some tax returns. I don't I didn't think there was anything wrong with that, I think how else am I supposed to send you things so I'm a little confused.

---

iMessage Conversation saved from my iPhone 15 Pro Max by [TouchCopy](TouchCopy) on 10/13/2025