**Order Filed on June 11, 2026**
**by Clerk**
**U.S. Bankruptcy Court**
**District of New Jersey**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| In Re: | Case No.: | 25-16171 |
| **LISA ANN FILIPPINI,** | Chapter: | 13 |
|  | Judge: | John K. Sherwood |
| Debtor. | | |

## DECISION AND ORDER RE: DEBTOR'S MOTION FOR SANCTIONS

The relief set forth on the following pages, numbered two (2) through nine (9), is hereby

**ORDERED.**

**DATED: June 11, 2026**

Honorable John K. Sherwood
United States Bankruptcy Court

Page 2
Debtor:        Lisa Ann Filippini
Case No.:     25-16171
Caption:      Decision and Order Re: Debtor's Motion for Sanctions

---

## INTRODUCTION

*Pro se* debtor, Lisa Ann Filippini ("Debtor"), moves for sanctions against her former attorney, Jonathan Stone, Esq., based on allegations that he abandoned her and joined forces with her largest creditor. Mr. Stone contends that the decision to terminate his representation was based on a threatening letter delivered to one of the Debtor's former employees containing his unauthorized signature. Shortly after learning about the existence of this letter, Mr. Stone reached the conclusion that the Debtor was behind it. He decided not only to terminate his representation of the Debtor and her mother (Diana Kemp, Case No. 25-16553), but also to prominently file pleadings with the Court accusing the Debtor of fraud, forgery, bad faith and dishonesty. Further, he brought these allegations to the attention of the attorney for the Debtor's largest creditor in an email exchange which suggested that they should collaborate against the Debtor.

The problem is that the overwhelming evidence considered by the Court proves that the Debtor had no knowledge that the letter bearing Mr. Stone's unauthorized signature had been sent. Now, both the Debtor and her mother have no attorney to help them navigate their Chapter 13 cases and defend potential claims, including claims for nondischargeability and objections to discharge, that will likely be brought against them.

## FACTS AND PROCEDURAL HISTORY

The Debtor's Chapter 13 case was filed on June 10, 2025 with Jonathan Stone, Esq. as the Debtor's attorney of record. Mr. Stone charged a flat fee of $4,750 for his services in this Chapter 13 case. The Debtor paid $1,780 towards attorneys' fees at the time of his retention with the remaining balance of $2,970 to be paid through her Chapter 13 plan. [ECF No. 1]. The Debtor owns and operates a dog grooming business, Lisa's Priceless Pets, LLC. The Debtor's largest

Page 3
Debtor:        Lisa Ann Filippini
Case No.:      25-16171
Caption:       Decision and Order Re: Debtor's Motion for Sanctions

---

creditor is Shannon a/k/a Everett Reilly ("Reilly") with a claim of more than $500,000 based on unpaid wages. Reilly is represented by Eni Mihilli, Esq. and has been actively opposing the Debtor in this Chapter 13 case. Reilly has sought discovery and will probably file a complaint against the Debtor objecting to her discharge and/or the dischargeability of Reilly's claim. [ECF No. 97].

Ms. Kemp's Chapter 13 case was filed on June 21, 2025, with Jonathan Stone, Esq. as her attorney of record. Mr. Stone charged a flat fee of $4,750 for the Chapter 13 case. Ms. Kemp paid $800 towards attorneys' fees at the time of his retention with the remaining balance of $3,950 to be paid through the plan. [Case No. 25-16553, ECF No. 1]. Reilly is also Ms. Kemp's largest creditor with a claim of over $500,000 based on unpaid wages. The Debtor and Ms. Kemp maintain that Ms. Kemp is not an owner of Lisa's Priceless Pets, LLC, and is therefore not liable for the alleged unpaid wages, but Reilly disputes this. As in the Debtor's case, Reilly sought discovery and will probably file a complaint against Ms. Kemp objecting to her discharge and/or the dischargeability of Reilly's claim. [Case No. 25-16553, ECF No. 76]. According to the Debtor, the Reilly claim is the primary reason that she and her mother had to file bankruptcy proceedings.

The Chapter 13 cases proceeded on a relatively normal course until October 11, 2025, when Mr. Stone discovered that a threatening letter had been delivered to one of the Debtor's former employees, Shirley DePaola, containing his unauthorized signature. [ECF No. 42-2]. Mr. Stone was understandably upset and immediately confronted his client by text message. The text message exchange, which can only be described as a comedy of errors, is the basis for Mr. Stone's contention that the Debtor admitted that she authorized the letter to Ms. DePaola. The sequence and content of the texts, which the Court closely reviewed, is as follows:

Page 4
Debtor:          Lisa Ann Filippini
Case No.:        25-16171
Caption:         Decision and Order Re: Debtor's Motion for Sanctions

---

- 10/10/25 – The night before Mr. Stone learns about the letter. The Debtor texts Mr. Stone saying that she sent him tax returns with assistance from her accountant (Larry Steze) and that her previous lawyer had already sent check stubs and other "stuff" that was too voluminous to send by email. She proposed dropping off some documents in person. Apparently, this collection and delivery of information by the Debtor was in response to discovery requests.

- 10/11/25 – After Mr. Stone learns about the unauthorized letter. He texts the Debtor about "a document that uses my name and appears to have been sent by you to a third party. Please confirm whether you wrote or distributed it."

- Debtor responds – "From Larry Steze my accountant." She thinks they are talking about tax returns.

- Mr. Stone seeks clarification – "did you personally send or authorize this document that uses my name, or did Mr. Steze do so on your behalf?" Mr. Stone thinks the Debtor sent the letter with the help of her accountant.

- After the Debtor says "Yes," Mr. Stone seeks further clarification – "when you said 'Yes,' did you mean you personally sent the document, or that you authorized someone else to send it using my name?"

- The Debtor's response – "He sent it to me and I sent it to you. He did it open [because] I told him I was in a rush" then "He wouldn't send it to you." Though this exchange is vague, it still seems like the Debtor thinks they are talking about tax returns that she had received from her accountant. But Mr. Stone thought that the Debtor had acknowledged that she had authorized the delivery of the letter to Ms. DePaola with the help of her accountant.

- Thinking that the Debtor had admitted to authorizing the letter, Mr. Stone sends a cease and desist text directing that all documents concerning the letter be placed on litigation hold.

- The Debtor responds – "I don't understand??? What ??" It is noteworthy that the Debtor is in the hospital at this time with a leg injury.

- Mr. Stone responds – "*I'm referring to the document you admitted sending that used my name . . . .*"

- Finally, the Debtor says – "All I sent you was the tax's [sic] from Larry. He sent them to me. He's my accountant."

[ECF No. 44-1].

Page 5
Debtor:        Lisa Ann Filippini
Case No.:      25-16171
Caption:       Decision and Order Re: Debtor's Motion for Sanctions

This bizarre exchange was a classic example of two people talking past each other. Mr. Stone was texting about the letter to DePaola, while the Debtor was texting about tax returns. Yet, Mr. Stone apparently believed that the Debtor admitted to being behind the letter to Ms. DePaola.

Mr. Stone went into attack mode. The text exchange occurred on Friday and Saturday. By Monday, October 13, 2025, Mr. Stone filed a Motion to withdraw as the Debtor's attorney. [ECF No. 42]. The same day, he filed a Notice of Fraudulent Conduct by Debtor and Conflict of Interest Requiring Withdrawal of Debtor's Counsel. [ECF No. 43]. In these documents, Mr. Stone accused his client of forgery, creating a false record, criminal impersonation of an attorney, fraud, bad faith and dishonesty. Mr. Stone writes in his Motion to withdraw, "the Debtor had already clearly admitted to me that she orchestrated the creation and delivery of the forged letter." The only text message he supplies was sent by the Debtor after the above exchange in which she expresses her confusion. Mr. Stone claims that this message was "deliberately misleading." He did not attach a message that showed her alleged admission or provide the Court with the entire text exchange which demonstrates the context and misunderstanding. [ECF No. 42-1, pp. 6-7 of 16].

The next day, Mr. Stone emailed with Reilly's attorney, Ms. Mihilli, thanking her for her "ongoing support and collaboration" and suggesting that he would report the Debtor to the FBI for committing "bankruptcy crimes." He thanked Ms. Mihilli for her assistance and said, "I look forward to continuing our collaborative efforts and appreciate your partnership as we move forward." [ECF No. 118-4, p. 17 of 19]. At this point, Mr. Stone is still the Debtor's attorney and has decided to collaborate with his client's biggest adversary.

Mr. Stone also filed a Motion to withdraw as Ms. Kemp's attorney on the grounds that her daughter created personal and irreconcilable conflicts of interest through her alleged fraudulent

Page 6
Debtor:        Lisa Ann Filippini
Case No.:      25-16171
Caption:       Decision and Order Re: Debtor's Motion for Sanctions

conduct regarding the letter. While Ms. Kemp had nothing to do with the letter, Mr. Stone restated

his same forgery, creation of a false record, criminal impersonation of an attorney, fraud, bad faith

and dishonesty claims against the Debtor. Then, Mr. Stone called Ms. Kemp's veracity into

question, seemingly on the sole basis that she is the Debtor's mother. And, Mr. Stone goes so far

as to question Ms. Kemp's sworn testimony that she is not an owner of Lisa's Priceless Pets, *which

directly supports her largest creditor's case*. This was all done while Mr. Stone was still Ms.

Kemp's attorney. [Case No. 25-16553, ECF No. 42-1, ¶ 20].

To make matters worse, Mr. Stone was wrong about the Debtor's involvement with the

infamous letter. In her Opposition to Mr. Stone's Motion, the Debtor attached a handwritten letter

that she wrote and gave to Barbara Moore, who worked at the Debtor's business. The handwritten

letter is the same in substance as the typed letter, except that the handwritten letter is signed by

Lisa's Priceless Pets while the typed letter is signed with Mr. Stone's name. [ECF No. 44-3]. Ms.

Moore also submitted a handwritten letter that she signed, confessing that she typed the Debtor's

letter for her and that the Debtor never instructed her to sign Mr. Stone's name. [ECF No. 44-4].

On the return date of the Motion to withdraw as counsel, the Debtor appeared with Ms. Moore

who reiterated that she typed the letter and that the Debtor did not know she signed Mr. Stone's

name on it. [ECF No. 66, p. 9]. There is no evidence that contradicts Ms. Moore's account.

Mr. Stone was right to be upset that someone put his name at the bottom of the letter to Ms.

DePaola without his consent. He also was right to suspect that the Debtor might have been behind

the letter. But his swift decision to indict and convict his clients based on some vague text messages

was very wrong. As a result, the Debtor and her mother are without an attorney to help them in

their Chapter 13 cases and defend them against the claims by Reilly that are sure to come.

Page 7
Debtor:       Lisa Ann Filippini
Case No.:     25-16171
Caption:      Decision and Order Re: Debtor's Motion for Sanctions

_____

## ANALYSIS

Attorneys are subject to Rules of Professional Conduct ("RPC"). Pursuant to RPC 1.7(a)(2), a conflict of interest exists when "there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." A conflict of interest may be good cause for withdrawal from a case if "withdrawal can be accomplished without material adverse effect on the interests of the client." N.J. RPC 1.16(b)(1). An attorney may also withdraw from a case if the attorney's services were used to perpetrate a crime or fraud. N.J. RPC 1.16(b)(3). It may have been proper for Mr. Stone to withdraw from the Debtor and Ms. Kemp's cases if the letter was authorized by the Debtor. But Mr. Stone's conclusion was both hasty and incorrect, and his reaction to the letter was over the top. Moving to be relieved as counsel is one thing, but providing a roadmap for the destruction of his clients' Chapter 13 cases and offering to collaborate with his clients' largest creditor was excessive and too dramatic.

Under RPC 1.6, information that a lawyer receives relating to the representation of a client is confidential. Mr. Stone breached confidentiality with the Debtor by filing the Notice of Fraudulent Conduct [ECF No. 43] on the Court's docket. An exception to confidentiality provides that a lawyer shall reveal information to proper authorities if the lawyer "reasonably believes necessary, to prevent the client or another person . . . from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to perpetrate a fraud upon a tribunal." N.J. RPC 1.6(b)(2). For the purposes of RPC 1.6, reasonable belief is "the belief or conclusion of a reasonable lawyer that is based upon information that has some foundation in fact and constitutes prima facie evidence of the matters . . . ." N.J. RPC 1.6(e).

Page 8
Debtor:        Lisa Ann Filippini
Case No.:      25-16171
Caption:       Decision and Order Re: Debtor's Motion for Sanctions

---

Again, Mr. Stone's hasty reaction to the letter was not founded in fact or based on evidence. There was no reasonable basis to conclude that the Debtor had, or was about to, perpetrate fraud on the Court. Had the Debtor written the letter, the victims would have been Mr. Stone and Ms. DePaola. Even if Mr. Stone believed that the Debtor may have used his name without permission, this does not mean that all of the Debtor's statements in her bankruptcy case were false or that all of her future sworn statements would be false.

It is disturbing that Mr. Stone continued with his contempt against the Debtor even after evidence that the Debtor was not responsible for putting his name on the letter surfaced. He did not retract his negative statements against the Debtor on the docket or offer to remain in the cases as counsel. Mr. Stone has shown no remorse whatsoever.

Attorneys also have duties to former clients. RPC 1.16(d) requires that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests." Even before Mr. Stone's Motions to withdraw were granted, he acted against his clients' interests and collaborated with Reilly's attorney. Also, the Debtor stated she has called multiple different lawyers to take her Chapter 13 case, but they declined because of what Mr. Stone said about her. Mr. Stone disputes this but admits that he told another attorney that there is no reason he should take the case "unless he is willing to go through the same conduct that . . . [the Debtor] did to me," referring to the alleged fraud. [ECF No. 66, pp. 5-8]. Mr. Stone made it difficult for the Debtor and her mother to retain new counsel.

Section 329(b) of the Bankruptcy Code allows courts to order the return of unreasonable legal fees to the estate. *In re Veluz*, Case No. 14-20101, 2015 WL 161002, at *5 (Bankr. D.N.J. Jan. 12, 2015). The attorney bears the burden of proving the reasonableness of the attorneys' fees.

Page 9
Debtor:        Lisa Ann Filippini
Case No.:      25-16171
Caption:       Decision and Order Re: Debtor's Motion for Sanctions

---

*Id.* The Court in *Veluz* considered whether the attorney: (1) hindered the administration of the case, (2) caused unnecessary difficulties in confirming the Chapter 13 plan, and (3) threatened the outcome of the bankruptcy case. *Id.* Courts can also use their equitable powers under 11 U.S.C. 105(a) to issue monetary sanctions in the form of disgorgement of Chapter 13 fees. *In re Willis*, 604 B.R. 206, 215-16 (Bankr. W.D. Pa. 2019) (finding the attorney in violation of various rules, including Rules of Professional Conduct, and as sanctions disgorging Chapter 13 fees).

Mr. Stone has performed some work that benefitted the Debtor and Ms. Kemp. But, the value of the representation is far outweighed by Mr. Stone's violations of RPCs 1.6 and 1.16 described above. Mr. Stone hindered the administration of the cases and caused unnecessary difficulties for the Debtor and Ms. Kemp. Mr. Stone threatened the outcome of the bankruptcy cases by attacking his clients' credibility, questioning the dischargeability of the debts, stating the Debtor's alleged fraud may warrant cause for dismissal, and collaborating with Reilly's counsel.

**THEREFORE, IT IS ORDERED:** For the reasons set forth above, Mr. Stone's Chapter 13 attorneys' fees for the Debtor and Ms. Kemp will be disgorged. Mr. Stone is ordered to return all the funds he received from the Debtor, Ms. Kemp, and/or their bankruptcy estates within 10 days hereof. Mr. Stone is precluded from filing any claims against the Debtor or Ms. Kemp in their Chapter 13 cases.